HOWARD C. MILLER, APPELLANT, V. J. W. MAUST ET AL., APPELLEES.

FILED MARCH 1, 1935. No. 29124.

*Waring & Waring* and *Orville Baldwin*, for appellant.

*Walter C. Weiss* and *John L. Richards*, contra.

*Heard before* GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

ROSE, J.

This is an action of forcible entry and detainer. It was commenced in the county court of Thayer county. Howard C. Miller, plaintiff, pleaded in his complaint that, while he was in lawful and peaceable possession of the south 36 feet of the north 74 feet of lots 1 and 2 in block 13 in the original village of Carleton, on which is situated a building 18 feet wide and 60 feet long, during the night of November 1, 1933, or on the morning of November 2, 1933, J. W. Maust, Walter Schardt, John Raess, Henry Elting, Alec Dudgeon, Jr., and Alpheus Miller, defendants, broke the fastening on the padlocked door of the building, made an unlawful and forcible entry, and still hold possession of the premises by force; that plaintiff notified them November 3, 1933, to leave.

Defendants filed an answer containing a general denial, and alleging that the Farmers Union of Carleton was and now is in peaceable and lawful possession; that, of the Farmers Union, defendant Maust is president, defendant Schardt is secretary-treasurer, defendants Elting, Dudgeon Jr., and Raess are directors, and defendant Alpheus Miller is the new manager; that the Farmers Union is entitled to retain possession through the officers named.

Upon a trial of the cause the county court found defendants not guilty and dismissed the action. Plaintiff appealed to the district court and, at the conclusion of the testimony in a trial therein on the original pleadings, each side requested a peremptory instruction. The jury were excused and the action dismissed. Plaintiff appealed to the supreme court.

Plaintiff contends that, when in lawful and peaceable possession of the realty described in his complaint, defendants dispossessed him by forcible entry and detention, as shown by undisputed evidence; that, a forcible entry upon his actual possession having been conclusively proved, he was entitled to restitution, even if title and present right

of possession were in defendants; that questions of title and right of possession did not arise in the case, since plaintiff was in lawful and peaceable possession when wrongfully dispossessed by forcible entry.

On the contrary, it is argued by defendants that plaintiff had been the manager of the Farmers Union for 15 years or longer; that the possession which plaintiff claimed was the possession of the Farmers Union, his employer and master; that he was discharged as servant and manager, ordered to make a settlement and to permit defendants to take charge of the premises for the Farmers Union of which they were the officers; that plaintiff's occupancy was not possession in legal effect; that he was a trespasser when he retained his occupancy and refused to comply with the orders of his employer to turn the property over to defendants and to settle with them; that the severing of his occupancy and the termination of his services as manager were effected without a threat of personal violence or a breach of the peace; that the entry of defendants and their subsequent possession were lawful.

Plaintiff and defendants differed on what constituted the "Farmers Union." It was not a corporation or a partnership. There was nothing on a public record to show what it was. Nothing in the nature of a constitution or set of written by-laws was shown. It seems to have come into existence about 20 years ago as the "Farmers Equity" to buy and sell grain and stock and to purchase sugar, canned goods and other commodities. Later, 15 years ago, or earlier, it was named "Farmers Union" and its business was changed to buying and selling cream and poultry. There is testimony tending to prove it was a voluntary co-operative association, with a membership composed of farmers who patronized it. The realty where the business was conducted was deeded to the board of directors of the Farmers Union and their successors February 12, 1920. Since that date, until displaced November 2, 1933, plaintiff was the manager on a commission basis of 2 cents a pound for butter fat and ¾ or ½ of a cent a pound for poultry.

He had the key to the building and managed the business until displaced. He did not claim to own the real estate or to be a lessee or to have possession for himself. He testified that he held possession for the organizers of the Farmers Union, who were H. J. Schardt, F. P. Buck, W. E. Flory and himself. Defendants introduced in evidence the proceedings of a called meeting of members of the Farmers Union, indicating the election of defendants as officers or directors and the adoption of the following resolutions October 30, 1933:

"Be it resolved, that Howard Miller be discharged as manager of the Farmers Union, effective November 1, 1933, and that the new officers and directors be authorized to employ a new manager on such terms as they think best."

"Be it resolved that the new officers and directors be instructed to make a settlement, on behalf of the Farmers Union, with Mr. Miller on his account, and to take any necessary legal action either to secure such settlement, and or to make effective any and all other action directed by this meeting to be taken."

Defendants claimed plaintiff still owed them something as manager; demanded a settlement and charge of the premises and business October 30, or November 1, 1933; were told by plaintiff they could not take charge and "would have to take him by the seat of the pants and put him out." Evidence of those facts came from defendants, themselves. Thus warned in advance that plaintiff did not mean to be displaced except by personal violence, defendants, knowing that he claimed to be in lawful and peaceable possession of the premises, went to the building at an early hour in the morning, broke the fastening of the padlocked door in absence of the manager who had transacted the business conducted therein without interruption for 15 years, entered forcibly and retained exclusive occupancy, though part of the personal property therein belonged to plaintiff individually. The proper inference from the evidence is that personal violence was averted by stealth.

The resolutions authorized neither violence nor stealth. In view of the controversy anticipated by the resolutions and of the warning given to defendants before they entered the building, proceedings at law were more consistent with duty than force or stealth. Proved facts not in dispute seem to call for the application of the following principles of law as stated by Judge Sullivan:

"The purpose of the action was not to determine the actual ownership of the property or the legal right to its possession. The ground of complaint was that the entry and detention were unlawful and forcible, and the defendant could not justify by showing either an absolute ownership or a possessory right. 'Where the proceeding is for a forcible entry or for a forcible detainer,' say the supreme court of Wisconsin, in *Newton v. Leary,* 64 Wis. 190, 'it is the nature of the entry or detainer which constitutes the cause of action, and not the nature of the title which the respective parties have in the premises.' In *McCauley v. Weller,* 12 Cal. 500, 524, it is said: 'Questions of title or right of possession cannot arise; a forcible entry upon the actual possession of plaintiff being proven, he would be entitled to restitution, though the fee simple title and present right of possession are shown to be in the defendant.' Our statute in plain terms makes the character of the entry and detention the test of the plaintiff's right when the complaint charges that the defendant's possession was obtained forcibly and is being held by force. Section 1019, Code of Civil Procedure, provides that if the justice shall determine 'that an unlawful and forcible entry has been made, and that the same lands or tenements are held by force, * * * then said justice shall cause the party complaining to have restitution thereof.' 'One great object of the forcible entry act,' says Gantt, J., in *Myers v. Koenig,* 5 Neb. 419, 422, 'is to prevent even rightful owners from taking the law into their own hands and attempting to recover by violence, what the remedial powers of a court would give them in a peaceful mode.'" *Tarpenning v. King,* 60 Neb. 213.

Nothwithstanding the views of the law thus approved, defendants argue that their acts in terminating the occupancy of plaintiff and in retaining possession were justified under the following doctrine:

"The occupancy of a house by a man hired to operate a farm for a certain monthly wage, and the use of the house thereon to live in with his family, is incidental to the employment, and the right thereto ceases with the termination of the service. In such case the possession of the employee is, in legal effect, the possession of the employer." *Davis v. Long,* 45 N. Dak. 581, 14 A. L. R. 796.

In that case the employee, after his occupancy had been terminated, sued his employer, the owner of the farm, for restitution of the premises and for statutory treble damages for unlawful detention. Other cases involving the same principle were also cited, including: *Heffelfinger v. Fulton,* 25 Ind. App. 33; *Napier v. Spielmann,* 111 N. Y. Supp. 983; *Schwinn v. Perkins,* 79 N. J. Law, 515, 32 L. R. A. n. s. 51; *Bowman v. Bradley,* 151 Pa. St. 351; *Kerrains v. People,* 60 N. Y. 221. The doctrine invoked by defendants, however, does not seem applicable to the case at bar. They did not claim possession for themselves, but for the Farmers Union. Plaintiff did not own or lease the realty but, as manager, asserted lawful and peaceable possession for the organizers of the Farmers Union, of which he claimed to be one. Defendants conceded that plaintiff had been in lawful and peaceable occupancy continuously for 15 years, but base their defense on the difference between "possession" and "occupancy." The Nebraska statute empowering a justice of the peace to determine the issue in an action of forcible entry and detainer uses the term "lawful and peaceable entry." Comp. St. 1929, sec. 21-1401. Defendants knew of plaintiff's claim and that he meant to resist theirs. By stealth and force they broke into the building in his absence and afterwards kept him out. The law does not recognize an advantage obtained by such

means. The following rule was stated in a former case:

"A person who claims the paramount title to real property in the undisputed possession of another cannot, by surreptitiously obtaining possession thereof, place such former possessor at any disadvantage as to the assertion of his rights or the enforcement of his·remedies in respect thereto." *Brown v. Feagins*, 37 Neb. 256, followed in *Tarpenning v. King*, 60 Neb. 213.

It was the purpose of the statute relating to forcible entry and detainer to prevent parties to a litigable controversy like the present from taking the law into their own hands. The issue was not ownership or title, but "lawful and peaceable entry." On facts established without dispute, plaintiff was entitled to restitution, and for the purpose of granting him that relief on the record as it now stands the judgment is reversed and the cause remanded.

REVERSED.

Paine, J., dissents.