# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1949

_____

| | | |
|---|---|---|
| Fitzgerald Railcar Services of Omaha, | * | |
| Inc., an Illinois Corporation, | * | |
| | * | |
| Plaintiff – Appellee, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of Nebraska. |
| | * | |
| Chief Industries, Inc., | * | [UNPUBLISHED] |
| | * | |
| Defendant – Appellant. | * | |

_____

Submitted: February 18, 2005
Filed: May 17, 2005

_____

Before BYE, HEANEY, and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

Chief Industries, Inc., the parent company of Chief Transportation Products, Inc. (Chief), appeals an adverse decision from the district court[1] following a bench trial on Fitzgerald Railcar Services of Omaha, Inc.'s (Fitzgerald) declaratory judgment action. Fitzgerald, Chief's commercial tenant, sought a declaration from the district court that the lease agreement between the parties was valid, enforceable and has not been breached. Chief counterclaimed, seeking a declaration of breach,

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

an order of forcible entry and detainer as a remedy for the alleged breach, and monetary damages.

Following the adverse ruling from the district court, Chief filed this timely appeal, alleging the district court (1) erred by exercising jurisdiction over the case; (2) erred in finding the lease agreement had not been breached; (3) erred in finding Chief did not give proper notice; (4) erred in finding Chief was not entitled to restitution of the premises; and (5) erred in failing to award money damages. In evaluating these allegations of error, we review the district court's factual findings for clear error and its legal conclusions de novo. Tadlock v. Powell, 291 F.3d 541, 546 (8th Cir. 2002).

As a threshold matter, we conclude the district court properly exercised federal subject matter jurisdiction over this case pursuant to the diversity of citizenship jurisdictional provision of 28 U.S.C. § 1332. See Capitol Indem. Corp. v. Russellville Steel Co., 367 F.3d 831, 835 (8th Cir. 2004) ("Diversity jurisdiction exists where the amount in controversy is greater than $75,000 and where there is complete diversity of citizenship."). Chief does not dispute Fitzgerald's citizenship is diverse from its own, but rather contends the amount in controversy here is less than the requisite jurisdictional amount of $75,000. According to Chief, the value of the object of litigation–the lease agreement in alleged default–is somewhere between $38,211.55, the amounts accrued solely during Fitzgerald's occupancy, and $60,000, the amount certified as owing by the previous lessor. See James Neff Kramper Family Farm P'ship v. IBP, Inc., 393 F.3d 828, 833 (8th Cir. 2005) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.")).

Assuming, *arguendo*, the object of litigation is the amount owed under lease, Chief overlooks, in addition to the possible $60,000 amount due, that the lease

agreement also provides for recovery of double rent in the event of holdover and rent during the period the property remains vacant. This oversight notwithstanding, the value of the object of litigation is not measured simply by the amount in alleged default, as Chief contends, but also by the value of the lease agreement if terminated. See Hunt, 432 U.S. at 347 (stating the value of the object of litigation is measured by the losses that will follow from enforcement); City of Moore v. Atchison, Topeka, & Santa Fe Ry. Co., 699 F.2d 507, 509 (10th Cir. 1983) ("To determine the amount in controversy, we look to the pecuniary effect an adverse declaration will have on either party to the lawsuit."). As the district court stated, had Chief prevailed, Fitzgerald's profitable business, operating at $100,000 annual net profit, would likely cease and need to be relocated to another location, forcing Fitzgerald to forfeit, among other things, its right under the lease agreement to renew and continue operations on the premises until October 2016 at a rate of $22,500 per month. We are therefore convinced Fitzgerald has a significant economic stake in continuing the lease that well exceeds the jurisdictional requirement of $75,000.

Next, we move to the heart of the controversy–whether Fitzgerald materially breached the lease and whether Chief was entitled to retake possession of the premises. In regards to the merits, some variety of the word "confusing" has been used to describe the stature of this case. Despite the confusing stature of the case, the district court was able to conclude in a thoughtful and well-reasoned opinion, after conducting a bench trial, that Fitzgerald did not materially breach the lease, Chief did not give proper notice of default, and Chief was not entitled to restitution of premises. We reviewed these findings for clear error and found none. Tadlock, 291 F.3d at 546 ("A factual finding supported by substantial evidence on the record is not clearly erroneous.").

The sole remaining issue involves Chief's contention the district court erred by failing to award money damages on its counterclaim against Fitzgerald, the liability for which Chief labels as uncontroverted. Initially, we note there is some dispute

-3-

whether Chief may maintain a counterclaim for money damages in a forcible entry and detainer action. See Cummins Mgmt., L.P., v. Gilroy, 667 N.W.2d 538, 542-43 (Neb. 2003). We need not resolve this issue, however, because the district court found "[n]either side has shown to the court's satisfaction what amounts, if any, are owed under the lease."

Chief claims this finding was in error, and a new trial warranted, because everyone involved, including the district court, acknowledged Fitzgerald owed some amount. Chief, however, does not appear to understand the distinction between recognizing an amount may be due and proving what amount is due. While the district court may have recognized Fitzgerald's liability for the debt, it concluded Chief utterly failed to prove the amount due and owing with the required degree of legal certainty. In our careful review of the conflicting testimony and cryptic documents contained in the record, we can identify no clear error in the district court's conclusion. See Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 159 (1st Cir. 1990) ("Here, as is so often true in appeals following bench trials, appellant's claim 'reduces to the assertion that, had the facts been judged properly, [it] would have prevailed.' Unless the evidentiary scales are seriously miscalibrated, we must turn a deaf ear to such siren songs.").

For the foregoing reasons, the judgment of the district court is affirmed.

_____